WILLIAM ROSSBERG *vs.* STATE OF MARYLAND.

*Power of Municipal Corporation to Pass Ordinance Providing Additional Penalty for Offense Punishable Under State Law—Validity of Ordinance of Baltimore City Imposing Different Penalty for Sale of Cocaine—Invalidity of Provision for Forfeiture of License of Pharmacist Not Affecting Remainder of Ordinance.*

When the Legislature has authorized a municipal corporation to pass ordinances to protect the public health and to exercise the police power of the State, an ordinance is valid which imposes different or additional penalties for an offense already punishable under the general penal law of the State.

The same offense may be more injurious or more frequently committed in a municipality than in the State at large, and

the fact that an ordinance imposes penalties different from those imposed by the penal law of the State for the offense does not create a repugnancy or conflict between the ordinance and the State law, since the ordinance does not prohibit what the statute permits.

The fact that a person convicted of violating an ordinance may also be liable to prosecution for the same offense under the State statute, does not render invalid the conviction and punishment under the ordinance.

A municipal ordinance may impose additional penalties .upon pharmacists who sell certain drugs in violation of its provisions, but such ordinances cannot provide for the forfeiture of the license of the pharmacist, unless there be legislative authority therefor.

An ordinance of Baltimore City, approved June 19, 1908, prohibits the sale, giving away, or having in one's possession, cocaine and kindred substances, except upon certain prescribed conditions. The penalty for violation of the ordinance is a fine of from $100 to $500, with imprisonment in jail from six to twelve months, and if the offender be a licensed pharmacist, physician or dentist, the forfeiture of his license. The Act of 1906, Chap. 523, then in force, prohibits the sale or giving away of cocaine except upon the same conditions as those mentioned in the ordinance, and provides a fine of from $25 to $50 for the first offense, $50 to $100 for the second, and $100 to $200, with imprisonment for not more than six months, for the third and subsequent offenses. Section 18 of the Charter of Baltimore City provides that the Mayor and City Council shall have and exercise, within the limits of the city, all the power commonly known as police power, to the same extent as the State has or could exercise said power within said limits. Section 31 provides that the Mayor and City Council shall have the power to pass such ordinances as it may deem expedient in maintaining the peace, health and welfare of the city, and it may provide for the enforcement of such ordinances by such penalties and imprisonments as may be prescribed by ordinance, but no fine shall exceed $500 and no imprisonment shall exceed twelve months. *Held,* that the said ordinance is a valid exer-

cise of the power conferred, although there was then in force a State law providing a different penalty for the same offense.

*Held,* further, that the provision in the ordinance providing for the forfeiture of the license of a pharmacist, etc., found guilty of violating its provisions is invalid, because in the absence of express legislative power, an ordinance cannot be enforced by the forfeiture, but that the elimination of this part of the penalty leaves the remainder of the ordinance in full force.

*Decided November 12th, 1909.*

Appeal from the Criminal Court of Baltimore City (Har-LAN, Stockbridge and Niles, JJ.).

The cause was argued before Boyd, C. J., Briscoe, Pearce, Schmucker, Burke and Thomas, JJ.

*Joseph C. France* and *James J. McNamara,* for the appellant.

Whether by design, or otherwise, the State law does not make the mere possession of the drug by a person not belonging to the specified classes a crime. The ordinance in question attempted to do this, and also changed the State law in the following particulars: (1) It abolished the distinction between first, second and third offenses. (2) It doubled for the first offense the maximum penalties prescribed by the State law for third and subsequent offenses. (3) It abolished the functions of the State Board of Pharmacy. (4) It provided that one-half of the fines should go to the informer, notwithstanding the provision of the City Code (section 4 of Article X, page 730). (5) It omitted the word "knowingly" contained in the State law. (6) It omitted the direction of the State law requiring the judges of the Courts having criminal jurisdiction in this State to charge the grand juries at each regular term. Among other consequences of

the ordinance the possession of the drug by a chemist for use in his laboratory would be a crime, and a retail druggist is compelled to know at his peril whether a patent or proprietary medicine sold by him contains the authorized percentage of the drug.

Assuming for the moment that the terms and provisions of the ordinance would be valid if embodied in an Act of Assembly, and remembering that we are dealing with an ordinance and not with a local law (which is as much an Act of Assembly as is a general law), it is submitted that the real question in the case is this: Whether by force of the Charter of 1898 the Mayor and City Council can supersede, within the limits of Baltimore City, an Act of the General Assembly which on its face purports to regulate the whole subject-matter and to include the City of Baltimore. That the ordinance was intended to and does in fact supersede the Act is apparent, because: (1) Section 5 of the ordinance distinctly contemplates that it shall govern all cases arising after its passage. (2) It would be an anomaly if an Act and an ordinance (they being inconsistent) could be in force over the same territory at the same time. If this were so, no such question could ever arise as that decided in *State* v. *Falkenham,* 73 Md. 463. If the ordinance had been passed as a local law at the same session when the Act of 1906 was passed, no one would contend that both laws were applicable in Baltimore City. The City Charter expressly declares that such an ordinance as this must conform with the laws of the State.

Now the power of the Mayor and City Council to pass the ordinance in question could only have been exercised either under the above "General Welfare" clause, or under the "Police Power" clause of the charter. If it was exercised under the former, the ordinance, being inconsistent with a State law, is void on its face; if it was exercised under the "Police Power," it is likewise void. The "General Welfare" clause is but a grant of the same powers embraced under the "Police Power;" therefore, an ordinance passed under the

latter is subject to ·the same limitation as to the consistency. with the State law. *Bostock* v. *Sams,* 95 Md. 15; *Cochran* v. *Frostburg,* 81 Md. 54; *Comrs. of Easton* v. *Covey,* 74 Md. 262.

There is seemingly a conflict in the authorities generally as to whether or not an ordinance is valid which provides for the punishment of an offense which is punishable under the State law. Those cases which hold that such an ordinance is valid rest their conclusion upon the hypothesis that the same offense may be a crime against both the State and the municipal authorities, and may be punished by either or both without violating the constitutional provision that a person may be put in jeopardy but once. (*Mobile* v. *Allaire,* 14 Ala. 400, 403.) The case of *Shafer* v. *Mumma,* 17 Md. 331. is sometimes cited as an authority for the proposition, but it is difficult to see how that decision can in any way be said to have any bearing on or analogy to the present case. JUDGE COOLEY is also quoted as an authority for this view. But let us see what JUDGE COOLEY actually says. In his work on "Constitutional Limitations" he says (page 278): "Municipal by-laws· must also be in harmony with the general laws of the State and with the provisions of the municipal charter. Whenever they are in conflict with either the by-law must give way." This would certainly seem to cover the case at hand. But he goes on to say: "Indeed, an act may be a penal offense under the laws of the State and further penalties, under proper legislative authority, be imposed for its commission by municipal by-laws, and the enforcement of the one would not preclude the enforcement of the other." It appears that inattention to the limiting phrase, "under proper legislative authority," in the above extract is responsible for many of the confused rulings on this subject; for where the power is distinctly given to the municipal authorities to legislate on a certain subject already covered by the general law there is strength in the contention that an ordinance passed under this power is valid. But it is difficult to perceive how the right to pass such an ordinance can be exercised under a

grant of general powers, such as the police power, etc., when the State has already legislated upon that particular question, and especially when it is plainly stated in the grant, as in the present case, that the exercise of power thereunder must not be inconsistent with the laws of the State. This distinction is made clear by McQuillin in his work on "Municipal Ordinances" (sec. 499, page 783). It seems to have been overlooked in many of the adjudications holding conflicting ordinances valid.

But conceding that the authorities are in conflict on this subject, it is submitted that the weight of authority is with those cases which hold void ordinances conflicting with general laws of the State, and it is to be noted that almost without exception the text-book writers have adopted this as the better view. JUDGE DILLON's opinion has been largely quoted. He says: "In view of the somewhat strict construction of grants of corporate powers, elsewhere explained and illustrated, and of the subordinate nature and purposes of by-laws the following rules, although seeming to rest on sound principles, are, in view of the decisions, stated with distrust of their entire correctness: (1) A general grant of power, such as mere authority to make by-laws or authority to make by-laws for the good government of the place, and the like, should not be held to confer authority upon the corporation to make an ordinance punishing an act—for example, an assault and battery—which is made punishable as a criminal offense by the laws of the State." The writer then makes the distinction referred to in the preceding paragraph. (*Dillon, Mun. Corp.,* section 368.)

Other writers who have adopted this view as the better one are: *McQuillin, "Mun. Ord.,"* (sec. 16, page 22; also sec. 499, page 783); *J. W. Smith, "Mun. Corp.,"* (Vol 1, secs. 523-524, pages 495-499); *Abbott, "Mun. Corp.,"* (Vol. 2, sec. 536, page 1341); *Ingersoll, "Pub. Corp.,"* (page 238); 21 *Am. & Eng. Encyc.,* title "Ordinances" (page 980).

Some of the cases hold that the mere fact that the State Act and the ordinance cover the same offense, produces a con-

flict, which renders the ordinance void. (*In re Sic.,* 73 Cal., 143; *State* v. *Keith,* 94 N. C. 933.)

But the Act of 1906 provides one penalty for a violation of it, and the ordinance provides a different one for the same offense. A case very much in point is that of *State* v. *Langston,* 88 N. Car. 692, where an act of the General Assembly provided that any person convicted of selling liquor on Sunday should be deemed guilty of a misdemeanor and fined or imprisoned, or both, while the ordinance provided for a fine of twenty dollars ($20) for the one committing the same offense. The Court, in holding the ordinance void, said (page 693) : "The power conferred upon the municipal body is presumed to be subordinate to a public law regulating the same matter for the entire State, unless a clear intent to the contrary is manifest." The Court also quotes with approval the language of JUDGE DILLON, *supra,* page 8. And in a later case in the same State, *State* v. *Keith,* 94 N. C. 933, it is said: "It is indictable under the general law of the State to so assault such officer, and it is settled that a town ordinance that undertakes to make that which constitutes a criminal offense under the general law of the State an offense against the town, punishable by fine or otherwise, is inoperative and void." See also *Town of Washington* v. *Hammond,* 76 N. C. 33-35; *State* v. *Brattain,* 89 N. C. 575.

In an early case in South Carolina, *Schroder* v. *City Council of Charleston,* 3 Brev. 533 (1815), the Court said (page 539) : "By the Act of 1784 (Grimke, 341), it is enacted that if any person, or persons, within this State, not duly licensed in manner above directed, shall presume to retail any wine, brandy, rum, etc., or any spirituous liquor, or strong drink whatever, he, she or they shall forfeit the sum of fifty pounds sterling, to be recovered in any Court of record in this State, one-half to be paid to the informer, etc. The City Council have passed a by-law imposing a penalty of one hundred dollars ($100) for the same offense. This by-law must either virtually repeal the act of the Legislature, or it must impose

an accumulative fine of one hundred dollars ($100) on the penalty provided by the Act of 1784. The first is too absurd to obtain any advocate, and the last too extravagant to admit of argument, and has been abandoned by the Council."

In Georgia, beginning with the early case of *State* v. *Savannah* (1809), 17 T. U. P. Charl. 235, there is a long line of decisions holding such ordinances void. In the particularly well-considered case of *Savannah* v. *Hussey,* 21 Ga. 80, often quoted by the authorities, the Court, in holding that the "general welfare" clause in a city charter does not authorize the passage of an ordinance prescribing a different mode of trial and punishment than that provided by the State law for the same offense, says (page 86) : "Can a municipal corporation legislate *criminaliter* upon a case fully covered by a State law ? I am aware that decisions may be found to support the affirmative of the foregoing proposition. Without stopping to investigate the applicability of these precedents to the point under enquiry, I ask, what limit will you set to this power ? If it may legislate by ordinance for any one offense, may it not for every crime embraced within the penal code ? Arson within a town or city is provided for by the public law; why not pass a by-law prescribing another mode of trial, and a different punishment for the same offense if committed within their limits ? So of the crimes of forgery, counterfeiting, perjury, etc. Such, I am sure, has not been the understanding of the country."

In a later case in the same State, *Jenkins* v. *Thomasville,* 35 Ga. 145, the Court says (page 147) : "The State having passed a law upon the same subject to allow the authorities of Thomasville to punish it as an offense against their ordinances would be either to oust the jurisdiction of the State in the premises, or to punish the offense twice—once by the State and again by the town." And again, in a recent case: "This Act, therefore, confers no express legislative authority authorizing the passage of such an ordinance, and it follows that if the facts relied upon for a conviction of the defendant in this case constitute an offense against the penal law of the

State, the municipal Court had no jurisdiction of the case, and the decision now under consideration is unauthorized." (*Kassel* v. *Sarannah,* 109 Ga. 491, page 493, affirmed in *Kassel* v. *Savannah,* 110 Ga. 289.) To the same effect are *Moran* v. *Atlanta,* 102 Ga. 840; *Kahn* v. *Macon,* 95 Ga. 421; *Reich* v. *State,* 53 Ga. 75; *Adams* v. *Albany,* 29 Ga. 57.

In Louisana there was a State law to prevent gambling. The General Council of New Orleans passed an ordinance making it unlawful to keep certain games, among them keno. In *City of New Orleans* v. *Miller,* 7 La. Ann. 651, it was held that the offense of keeping the game of keno was punishable under the State Act on Gambling, and the decision of a magistrate that the ordinance was null and void was accordingly affirmed. See also *State* v. *McNally,* 48 La. Ann. 1450; *Taylor* v. *City of Owensboro,* 98 Ky. 271; *Bailey* v. *Com.,* 23 Ky. Law Rep. 1223; *Ex parte Wickson,* 47 S. W. Rep. 643; *Jefferson City* v. *Courbmire,* 9 Mo. 692; *Ex parte Solomon,* 91 Cal. 440; *Town of Petersburg* v. *Metzker,* 21 Ill. 205; *In re Lee Tong,* 18 Fed. Rep. 253.

It is submitted that most of the cases cited by the State's Attorney are suits brought in the name of the municipal corporation, either for the collection of fines or in the exercise of a duly authorized independent jurisdiction. No such independent jurisdiction exists in this State. Our Criminal Courts are State Courts, and all indictments must conclude against the peace and dignity of the State (Constitution, Article IV, section 13). In *Shafer* v. *Mumma,* 17 Md. 331, there was no State law involved, and the language of the Court in the concluding part of the opinion simply means that the Mayor of Hagerstown could, under its charter, impose and collect a fine for disorderly conduct, notwithstanding the offense might be one against a State law. The real point decided was that in so doing the Mayor did not act as the Court, and consequently the proceeding was not, in the sense now under discussion, a criminal proceeding. In *Deems' Case,* 80 Md. 164, the city had express legislative authority

for the ordinance, and this authority (Code, Article 27, section 234) was subject to the express limitation that the ordinance should not be inconsistent with the Act. In the *Maryland Telephone Company's Case,* 99 Md. 175-6, it was held that the ordinance in question was a contract and not legislation, and was not, therefore, an attempt on the part of the city to usurp legislative functions by fixing rates already covered by an Act of the Legislature.

The forfeiture clause confiscating, not an offending thing capable of no legitimate use, like a lottery book (*Ford's Case,* 85 Md. 465), or unsound milk (*Deems' Case,* 80 Md. 164), but a man's means of livelihood, constitutes cruel and unusual punishment. (8 *Am. & Eng. Ency. Law,* 440; *Robinson* v. *Minor,* 68 Mich. 549; and compare *Maguire's Case,* 47 Md. 495, and *Ex parte Garland,* 71 U. S. 333.)

Moreover, except where the *res* is capable of none but a criminal use it is doubtful whether the State can make mere possession a crime, as distinguished from *prima facie* evidence of an intent to violate a law. And even if it be assumed that the State can change the rules of evidence in this respect, it is submitted that no such power has been vested in the Mayor and City Council of Baltimore.

Assuming, however, for the purpose of the argument, that the ordinance would be valid if it were a local law of the General Assembly, the question remains, whether by force of the charter, the Mayor and City Council of Baltimore can supersede, for the period of two years which intervenes between the sessions of the Legislature, an Act comprehensive in its scope and purporting to cover the entire State and to regulate the entire subject-matter. Whether the Legislature could by express authority vest this power in the Mayor and City Council may be debatable, on account of the provisions of section 9 of Article XI of the Constitution. Assuming, however, that by express terms a clause might have been put in the Charter of 1898 giving the right to the city to repeal, abridge or supersede by subsequent ordinance a prior general criminal

statute of the State, it is respectfully submitted that no such power is contained in the charter.

. The right to exercise the police power conferred by the charter (sub-division 18 of section 6) was not a new thing (*Harrison* v. *Mayor and City Council*, 1 Gill, 202; *Lake Roland Elevated Railway Company* v. *Mayor and City Council*, 77 Md. 361-380). "Police power" is not an apt term to describe criminal jurisdiction, and the only part of the charter bearing upon the question under discussion is sub-division 31 of Article VI, dealing with "welfare and other powers." Obviously, the power to promote the general welfare includes everything that could be covered under the police power (*Bostock* v. *Sams,* 95 Md. 415; *Am. & Eng. Ency. Law*, Vol. 22, page 927). "The real object of the police power and that which includes nearly every exercise is the securing of the general welfare." It is this "welfare clause" that deals with the right of the City of Baltimore to enforce its ordinances, and it is expressly provided that the ordinances which may be enforced by a fine not exceeding five hundred dollars and imprisonment not exceeding twelve months are ordinances "not inconsistent with the provisions of this Article or the laws of this State."

Any doubt upon this subject must be resolved in favor of the citizen and against the municipality (*Heiskel's Case,* 65 Md. 148; *Bostock* v. *Sams,* 95 Md. 412).

If selling cocaine in Baltimore City is a more serious offense than its sale, say, in Highlandtown, surely the same thing could be said of arson. There is no reason why the Mayor and City Council should not abolish for Baltimore City the death penalty or change a general election law. Such results were certainly not contemplated by the Charter Commission, because in their report to the General Assembly, which accompanies the charter, they do not include an independent criminal jurisdiction in the enumeration of their "improvements on the present law relating to the City of Baltimore."

No such power as that contended for by the State's attorney is desirable or necessary. The existing State law, if properly enforced by the police, is easily sufficient to remedy the evil. The ordinance in question, by eliminating the State Board of Pharmacy and its duties and by imposing such Draconian penalties, has done more harm than good. For illustration, it is certainly clear that the city cannot, under its right to fine and imprison, forfeit the license of the druggist, which is not merely a permit, such as is a liquor license, granted from year to year, but which, after having once been granted by the city, vests a property right to be held during good behavior, such as is the right to practice law. The result is this: Since the forfeiture clause of the ordinance is *ultra vires,* and since an offender cannot be prosecuted and punished under both laws, the wise forfeiture provision of the State law, visited upon an habitual offender, is thwarted so far as Baltimore City is concerned. To the same effect are *Flood* v. *State,* 19 Tex. Crim. App. 584, and *ex parte Fagg,* 38 Tex. Crim. App. 573. See also *Ex parte Bourgeois,* 60 Miss. 663.

*Isaac Lobe Straus, Attorney-General* and *Albert S. J. Owens, State's Attorney of Baltimore City,* for the appellee.

When the necessities of Baltimore City, with its large and varied population, densely settled upon a limited territory, are considered, the import and policy of the provisions of the City Charter cannot be mistaken, and the plain language and purpose of those provisions, it is respectfully submitted, suffice of themselves to show the correctness of the rulings of the Court below and to dispose of this appeal.

If, after reading these sections of the charter, there could remain any doubt as to the perfect validity of the ordinance, such a doubt must be effectually set at rest by the decisions of this Court in *Shafer* v. *Mumma,* 17 Md. 336-7; *Deems* v. *Mayor, etc.,* 80 Md. 173-176; *Simons Sons Co.* v. *Md. Tel. Co.,* 99 Md. 141; *Meushaw* v. *State,* 109 Md. 84. See also *Freund's Police Power,* sec. 157.

It is too obvious to require discussion that the danger and evil of an insufficiently restricted' traffic in and use of cocaine in a thickly populated city are far more grave and threatening than in the more sparsely settled counties of the State, and therefore the subject when dealt with in a city like Baltimore is an entirely *different matter* from what it is when dealt with in the country. And, further, there is *nothing inconsistent* in making the penalty heavier in the city under the ordinance than it is under the State law. The State law is not abrogated. The City has simply, in the exercise of the plenary police and welfare powers bestowed upon it, dealt with a serious emergency within its limits threatening its health, morals and' order, as the Legislature manifestly, by its full unabridged grants of power, intended it should do. 22 *American and English Encyclopædia of Law,* title "Public Power," sub-title "Delegation to Municipalties," pages 919-20; 28 *Cyc.* 693.

The General Assembly of Maryland has in *plain* and *unmistakable* language conferred all of its police power upon the City of Baltimore, to be exercised by it within its boundaries. If it has not done this by the language of section 18 of the charter, it is impossible ɗor language to have that effect. See 28 *Cyc.* 696-698, 701; 36 *Century Digest,* title Mun. Corp., sec. 1311; *McQuillan on Mun. Ord.,* 785, 786; 3 *Abbott, Mun. Corp.,* 1343.

In *Cooley's "Constitutional Limitations"* (7th Ed.), page 279, it is said: "An act may be a penal offense under the laws of the State and *further penalties,* under proper legislative authority, be imposed for its commission by *municipal bylaws,* and .the enforcement of the one would not preclude the enforcement of the other."

The cases sustaining the State and controverting the contention of the appellant in this appeal are too numerous for citation. The Court will find a full and orderly discussion oʹf them in an elaborate note to the case of *Seattle* v. *McDonald,* 17 L. R. A., N. S.,. 49, etc., and in the learned' and able opinion of the Judges who heard and decided this ʹcase below.

The position of the State is illustrated and sustained by the following decisions, arranged chronologically: 1828—*Rogers* ats. *Jones,* 1 Wendell, 237 (N. Y.) ; 1840—*State* v. *Plunkett,* 18 N. J. L. 5 ; 1845—*Mayor of Mobile* v. *Rouse,* 8 Ala. 515 ; 1847—*St. Louis* v. *Bentz,* 11 Mo. Repts. 61 ; 1848—*Meyer* v. *Alloire,* 14 Ala. 400 ; 1851—*Marsh* v. *Commonwealth,* 12 B. Monroe, 25 (Ky.) ; 1854—*New York* v. *Hyatt,* 3 E. D. Smith, 156 (N. Y.) ; 1856—*City of St. Louis* v. *Cofferata,* 24 Mo. 94 ; 1857—*Brooklyn* v. *Toynbee,* 31 Barbour Repts. 282 (N. Y.) ; 1858—*Gardner* v. *People,* 20 Ill. 430 ; 1859—*City of Pekin* v. *Smelzel,* 21 Ill. 464 ; 1860—*State* v. *Cowan,* 29 Mo. 330 ; 1865—*Rice* v. *Kansas,* 3 Kansas, 141 ; 1871—*State* v. *Charles,* 16 Minn. 474 ; 1871—*State* v. *Crummey,* 17 Minn. 72 ; 1872—*State* v. *Sly,* 4 Oregon, 277 ; 1873—*Greenwood* v. *State,* 65 Tenn. 567 ; 1873—*Ex parte Douglass,* 1 Utah, 108 ; 1875—*Com.* v. *Gardner,* 117 Mass. 114 ; 1875—*City of Elk Pt.* v. *Baughn,* 1 Dak. 113, 46 N. W. 577 ; 1875—*Broomville* v. *Cook,* 4 Neb. 101 ; 1875—*State* v. *Ludwig,* 21 Minn. 202 ; 1876—*Baldwin* v. *Murphy,* 82 Ill. 486 ; 1877—*Seibold* v. *People,* 86 Ill. 33 ; 1877—*State* v. *Bergman,* 6 Oregon, 341 ; 1878—*State* v. *Williams,* 11 S. C. R. 288 ; 1879—*Wrogg* v. *Penn Township,* 94 Ill. 11 ; 1879—*State* v. *Mason,* 3 Lea, 649 ; 1880—*State* v. *Gleason,* 26 Minn. 507 ; 1880—*Bloomfield* v. *Trimble,* 54 Iowa, 399 ; 1881—*Louisiana* v. *Chase,* 33 La. Ann. 287 ; 1882—*Johnson* v. *State,* 59 Miss. 543 ; 1882—*State* v. *Lee,* 29 Minn. 445 ; 1882—*Ex parte Bourgeois,* 60 Miss. 663 ; 1883—*Hawkins* v. *People,* 106 Ill. 628 ; 1885—*McPherson* v. *Cheborne.* 114 Ill. 46 ; 1885—*City* v. *Disney,* 19 Mo. App. 20 ; 1885—*Hughes* v. *People,* 8 Col. 836 ; 1886—*State* v. *Shelby Co.,* 16 Lea, 240 (Tenn.) ; 1886—*Wong* v. *Astoria,* 13 Oregon, 538 ; 1888—*St. Louis* v. *Schoenbusch,* 95 Mo. 618 ; 1888—*Tom Connie* v. *Calbourn,* 30 S. C. R. 93 ; 1889—*People* v. *Hanrahan,* 75 Mich. 611 ; 1889—*Foster* v. *Brown,* 55 Iowa, 686 ; 1890—*Van Buren* v. *Wells,* 53 Ark. 368 ; 1890—*People* v. *Del. Lead Works,* 82 Mich. 471 ; 1890—*City of De Soto*

v. *Brown,* 44 Mo. App. 148; 1891—*City of Plattsburg* v. *Trimble,* 46 Mo. App. 408; 1892—*McInerney* v. *Denver,* 17 Colo. 307; 1892—*Kansas City* v. *Neal,* 49 Mo. App. R. 72; 1893—*State* v. *Founcode,* 45 La. Ann. 719; 1893—*State* v. *Clifford,* 45 La. Ann. 980; 1893—*Ex parte Hong Sheu,* 89 Cal. 685; 1894—*Theisen* v. *McDavid,* 34 Fla. 440; 1894— *Monroe* v. *Hardy,* 46 La. Ann. 1232; 1894—*In re George,* 53 Kansas, 659; 1894—*Town of Opelonson* v. *Gerni,* 46 La. Ann. 1364; 1894—*City of St. Joseph* v. *Verber,* 59 Mo. App. 459; 1894—*Kansas City* v. *Hallet,* 59 Mo. App. 160; 1894— *State* v. *Preston,* 38 Pac. Rep. 594 (Idaho); 1895—*In re John J. John,* 55 Kansas, 694; 1895—*Taylor* v. *Owensboro,* 98 Ky. 271; 1896—*Yankton* v. *Douglass,* 8 S. Dakota, 440; 1896—*Kansas City* v. *Grubel,* 57 Kan. 436; 1896—*Ex parte Caldwell,* 138 Mo. 233; 1897—*State* v. *Newman,* 96 Mo. 248 (Wis.); 1897—*Spring Valley Case,* 71 Ill. App. 432; 1898— *Seattle* v. *Chin Let,* 19 Wash. 38; 1902—*Glasgow* v. *Bozan,* 96 Mo. App. 412.

The attention of the Court is furthermore, respectfully called to the many unchallenged instances where the city in the exercise of its police laws has passed penal ordinances on important subjects embraced within the public General Laws of the State. *Malicious Destruction of Property—Ord., City Code,* Art. 25, sec. 59; *Code P. G. L.,* Art. 27, secs. 71-80. *False Weights and Measures—City Code,* Art. 23, sec. 31; *Code P. G. L.,* Art. 97, sec. 11. *Gaming—City Code,* Art. 12; *Code P. G. L.,* Art. 27, secs. 199-215. *Registry of Physicians—City Code,* Art. 14, sec. 189; *Code P. G. L.,* Art. 43, secs. 93-102. *Contagious and Infectious Diseases—City Code,* Art. 14, secs. 15, 194, 26, 17, 19, 12, 18, 31, 14, 11, 21, 25, 32, 16, 22, 27, 29; *Code P. G. L.,* Art. 43, secs. 26-39; secs. 56-73. *Sabbath Breaking—City Code,* Art. 31, secs. 2 and 3; *Code P. G. L.,* Art. 27, secs. 384, 385, 386. *Act 1895, Ch. 53—Ord. 1894,* No. 87, May 16, 1894, as amended by No. 130, July 9, 1894.

The learned Judges who decided the case below reached the conclusion that the forfeiture feature of the punishment

was so unusual and oppressive as to be unreasonable, and to be condemned for that reason, leaving the other provisions of the ordinance intact. It is submitted that this feature of the ordinance is not so unreasonable and unusual as to deserve the condemnation expressed by the Court below. 6 *Words and Phrases,* 5272—"Penalty;" *Black's Law Dictionary,* 883; 2 *Bouvier, Law Dictionary,* 645.

PEARCE, J., delivered the opinion of the Court.

The appellant, William Rossberg, indicted by the Grand Jury for the City of Baltimore for the violation of an ordinance of the Mayor and Ciy Council of Balimore known as the "Cocaine Ordinance," approved June 19th, 1908, which prohibits the sale, furnishing, giving away, or having in possession, cocaine and kindred substances, or compounds thereof, except upon certain conditions provided in said ordinance, and which provides certain penalties for its violation. At the time of the passage of this ordinance there was in force a State law, being Chapter 607 of 1904, as amended by Chapter 523 of 1906, which forbid the selling, furnishing, or giving away of cocaine and of the same substances and compounds mentioned in said ordinance, except upon the same conditions substantially as provided in said ordinance, and which provided certain penalties for violation of said statute.

The penalty provided by the ordinance is a fine of not less than one hundred, nor more than five hundred dollars, with imprisonment in jail for not less than six, nor more than twelve months, and if a licensed pharmacist, physician, dentist or veterinary surgeon, the forfeiture of his license.

The penalty provided by the State law is a fine of from $25 to $50 for the first offence; $50 to $100 for the second offence, and $100 to $200, with imprisonment in jail for not more than six months, for the third and subsequent offenses. The State law does not, as the ordinance does, make the mere possession of the drugs mentioned a misdemeanor, nor does it provide at all, as the ordinance does, for the revocation of the offender's license. The latter, therefore, is

somewhat broader in scope, and its penalties are heavier. The indictment contained nine counts, covering selling, furnishing and giving away cocaine, and having the same in his possession, the traverser being a licensed pharmacist. He demurred to the indictment and to each count, contending that the ordinance was invalid because of the existence of the State law dealing with and punishing the same offence dealt with by the ordinance. The case was heard by JUDGES HARLAN, STOCKBRIDGE and NILES, who overruled the demurrer, whereupon the traverser submitted under plea of *non cul,* and a verdict of guilty was rendered on the eighth count, charging a sale of cocaine to one Howard Nelson, and a fine of $100 and imprisonment in jail for one day was imposed, from which judgment the appeal was taken. While sustaining the demurrer, the lower Court, however, held that part of the penalty, which required the revocation of the license, to be unusual and oppressive, and therefore inoperative and void, but that its elimination as part of the penalty did not operate to destroy the general plan and intent of the ordinance, and left the rest of the ordinance in full operation and effect.

The first inquiry is as to the power of the municipal government of the City of Baltimore to pass the ordinance in question, or, in other words, whether such power has been delegated to it by the Legislature of the State. The powers thus vested in the city are broad and sweeping, and are expressed in terms which indicate a liberal view of the need of broad powers for effective local government of a great city. They are contained in thirty-one sections of the City Charter as it appears in the Baltimore City Code of 1906, and cover twenty-seven pages of that volume. Section 18, entitled "Police Power," is as follows:

"The Mayor and City Council of Baltimore shall have full power and authority: To pass ordinances for preserving order, and securing property and persons from violence, danger and destruction, protecting the public and city property, rights and privileges from waste or encroachment, and for

promoting the great interests and insuring the good government of the city.   To have and exercise within the limits of the City of Baltimore *all the power commonly known as the Police Power,* to the same extent as the State has or could exercise said power within said limits.   But no ordinance heretofore passed, or that shall hereafter be passed by the Mayor and City Council of Baltimore, shall hereafter conflict or interfere with the powers or the exercise of the powers of the Board of Police of the City of Baltimore, heretofore created, nor shall the said city, or any officer or agent of the city, or of the Mayor thereof, in any manner impede, obstruct, hinder or interfere with the said Board of Police, or any officer, agent or servant thereof or thereunder."

Section 31, entitled "Welfare and other Powers," is as follows:

"The foregoing or other enumeration of powers in this article shall not be held to limit the power of the Mayor and City Council of Baltimore, in addition thereto, to pass all ordinances, not inconsistent with the provisions of this article or the laws of the State, as may be proper in executing any of the powers either express or implied, enumerated in this section and elsewhere in this article, as well as such ordinances as it may deem expedient in maintaining the peace, good government, health and welfare of the City of Baltimore; and it may provide for the enforcement of all such ordinances by such penalties and imprisonments as may be prescribed by ordinance; but no fine shall exceed five hundred dollars, nor imprisonment exceed twelve months for any offense."   We have not been referred to, nor have we discovered, any other provisions in the charter of the city which relate to the questions involved in this case.

Broader or more comprehensive police powers could not be conferred under any general grant of police power, for the purposes mentioned in sec. 18, than those granted in that section, and when we consider the "Welfare Clause" of the charter, sec. 31, greater emphasis could not be laid upon the implied powers of the city for the maintenance of the peace,

ROSSBERG *vs.* STATE.

Opinion of the Court. [111.

good government, health and welfare of the city, than is there laid. That section expressly declares that, *no enumeration of powers in that article* shall be deemed to limit the power of the city, *in addition thereto,* to pass all ordinances, not inconsistent with that article, or the laws of the State, as may be proper in executing any of the enumerated powers, *express or implied,* contained anywhere in said article. The able argument of the appellants *practically ignores the existence of any implied powers,* and apparently proceeds upon the theory that where there is a State law dealing generally with a specific evil, then, unless *specific power* is conferred upon the city to deal by ordinance with that *specific evil,* an ordinance attempting to deal with that evil is unauthorized and void. The primary question in the case is therefore thus clearly and sharply defined.

No adjudication to this effect was produced, and we believe none can be, nor, does the suggestion find support in any text writer quoted or referred to in argument. JUDGE COOLEY, speaking of the powers of municipal corporations, says: "The powers of these corporations are either express or implied. The former are those which the legislative act under which they exist confers in express terms; the latter are such as are necessary in order to carry into effect those expressly granted, and which must therefore be presumed to have been within the intention of the legislative grant." *Cooley Const. Lim.,* 5th ed., page 233. In the present case, the legislative grant is not merely one of power to pass ordinances relating to specified police powers, regarded as a *part* only of the *general* police power, but the grant is of *"all* the power commonly known as the Police Power, to the same extent as the State has or could exercise said power within said limits." The implication therefore is a necessary one, that notwithstanding the preceding clause of that section of the charter enumerated *certain purposes* for which ordinances might be passed, the Legislature intended the city to have, in addition, the power to pass ordinances for any and all purposes relating to the exercise of the police power. If there-

fore the power to pass the ordinance in question can be considered as an implied power, it is well within the definition of an implied power given by JUDGE COOLEY, since the *whole* police power cannot be exercised if the exercise of any part of such power is to be withheld because such *part* is not *expressly* granted. But we regard the power here in question as an express power, and this is so whether we look, in the construction of the charter, either to one or both of the sections heretofore reproduced. The grant of *all* the police power is an *express* grant, and every *part* of the whole is therefore derived by *express* grant in sec. 18. If there could be any doubt of this, such doubt is set at rest by sec. 31, which, as we have said, expressly declares that the power to pass any ordinance not inconsistent with that article or with the laws of the State, shall not be limited by any enumeration of powers, anywhere in said article. We regard the legislative intent therefore to be clear, whether the power be viewed either as express or implied. We did not understand the appellant to deny that this power can be delegated by the State to a municipal corporation. It is true as a general proposition that the Legislature cannot delegate its power to make laws, but as expressed in 28 *Cyc.* 693: "After repeated challenge of municipal authority to exercise the police power, on the ground that it is a sovereign power, and therefore non-delegable, the doctrine is firmly established and now well recognized that the Legislature may expressly or by implication delegate to municipal corporations the lawful exercise of police power within their boundaries. * * * It may be full or partial, regular or summary; but it is never exclusive, as the Legislature has no authority to divest itself of any of its sovereign functions or powers." And JUDGE COOLEY says on page 229, of Const. Lim.: "The Legislature in such cases is not regarded as delegating its authority, because the regulation of such local affairs as are commonly left to local boards and officers is not understood to belong properly to the State; and when it interferes, as sometimes it must, to restrain and control the local action, there should be reasons of

State policy or dangers of local abuse to warrant the inter-
position." But passing from this consideration the real and
substantial contention of the appellant is two fold: 1st. That
a penal ordinance punishing the same act as .that punished by
·State law, is invalid and void; and 2nd, that even if this can-
not be sustained as broadly stated, that such an ordinance is
invalid where it is inconsistent with the laws of the ·State
upon the same subject, and· that in this case the ordinance in
question is inconsistent with the State law punishing the
same act punished by the ordinance.

In *Cooley's Constitutional Limitations,* 5th Ed., page 241,
the author says: "The State law and the by-law may both
stand together if not inconsistent. Indeed, an act may be a
penal offence under the laws of the State, *and further pen-
alties,* under proper legislative authority, be imposed for its
commission by municipal by-laws, and the enforcement of
.the one would not preclude the enforcement of the other.
Such is the clear weight of authority, though the decisions
·are not uniform."

In *McQuillan on Municipal Ordinances,* a recent elaborate
text-book, it is said: "It is entirely competent for the Legis-
lature to confer in express terms such powers as will enable
the local corporation to declare by ordinance any given act
an offense against its authority, notwithstanding such act
has been made by statute a public offense and a crime
against the State * * * and further penalties may be ·im-
posed for its commission or omission by municipal ordi-
nance."

In 28 *Cyc.·* 697, it is said: "Unless it is prohibited by
some express constitutional or statutory provision, by the
great weight of authority, municipal corporations may, by
ordinance, prohibit and punish acts which are also prohibit-
ed and punishable as misdemeanors under the general stat-
utes of the State or which may involve a common law of-
fense; * * * such ordinances after much strenuous contention
are now generally recognized as valid."

This statement of the law is supported by an overwhelming array of decided cases, collected in the notes to the works above cited, many of which we. have laboriously examined, but we do not deem it necessary to review them here. The view taken in these cases is tersely expressed in *Monroe* v. *Hardy,* 46 La. An. 1232, which was a prosecution by the Mayor of a city for a fine imposed by ordinance upon crap-shooting, which was prohibited also by the State law, and the Court said: "In certain classes of offenses there may be concurrent powers in the State and in municpal authorities to prohibit them. The decisions on this point have been so numerous and uniform in upholding this doctrine that it has passed into an elementary principle in the textbooks."

It cannot be said that the question now under consideration has been decided in any reported case in this State, but as said in the opinion of the lower Court in this case, the rule above laid down "seems to have been recognized as the law of Maryland in a dictum in *Shafer* v. *Mumma,* 17 Md. 331, even where the same tribunal has jurisdiction of a State statute and a municipal ordinance." The question actually decided in that case was that in trying and fining the female appellee the Mayor of Hagerstown was exercising the police power as contradistinguished from the judicial power of the State, but in the course of the opinion CHIEF JUSTICE LEGRAND said: "She was punished for an offense against the decency and morals of Hagerstown, and not against those of the State; she offended within the corporate limits, and for such offense she was made to answer. *This did not wipe out all responsibility for the offense to the dignity and sovereignty of the State.*" Though a dictum, this recognition of the rule by such distinguished judges as LEGRAND, TUCK and BARTOL must have great weight with their successors, especially when shown to be in harmony with the decisions of other Courts of high repute.

It follows from what we have thus far said that municipal authorities may be given concurrent power with the State to

punish certain classes of offenses, and that which first obtains jurisdiction of the person of the accused may punish to the extent of its power; and further that the ordinance is not made invalid by the mere fact that the State law and the ordinance provide in terms for distinct prosecutions for the same act. The lower Court, in this case, expressed this view so clearly that we reproduce and adopt the following passage from the opinion set out in full in the record: "But it is not necessary in the present case to decide whether a conviction or acquittal on a charge of the violation of a State statute could properly be pleaded to an indictment for the violation, by the same act, of a municipal ordinance. That question could be raised by a plea in bar on a second prosecution, and the Court now is only required to determine upon this demurrer whether *the possible condition* above mentioned invalidates the entire ordinance, so that no indictment whatever can be sustained under it. And the Court is clearly of opinion that the ordinance cannot be held invalid upon such ground."

But the appellant further contends that this ordinance is invalid under the express terms of the legislative grant, because it is inconsistent with the law of the State, and this supposed inconsistency is found in the fact that the penalties prescribed in the State law are different from those of the ordinance, the latter being heavier, and not distinguishing, as the State law does, between first, second and third offenses.

But all the text-writers already cited herein unite in declaring that *further and additional penalties* may be imposed by ordinance, without creating inconsistency. The true doctrine, in our opinion, is concisely stated in 28 *Cyc.* 701, as follows: "Such ordinances must not directly or indirectly contravene the general law. Hence ordinances which assume directly or indirectly to permit acts or occupations which the State statutes prohibit, or to prohibit acts permitted by statute or Constitution, are under the familiar rule for validity of ordinances uniformly declared to be null and void. Additional regulation by the ordinance does not render it

·void." And when their validity is challenged such ordinances will receive favorable construction, and be sustained by the Court, unless their invalidity clearly appears. *Wyse* v. *Jersey City Police Commrs.,* 68 N. J. L. 127.

The reason for this rule is well stated in *Van Buren* v. *Wells,* 53 Ark. 368, as follows: "Municipal corporations are in some respects local governments, established by law to assist in the civil government of the country. They are founded in part upon the idea that the needs of the localities for which they are organized, 'by reason of the density of population, or other circumstances, are. more extensive and urgent than those of the general public in the same particulars.' Many acts are often far more injurious, while the temptation to do them is much greater, in such localities than in the State generally. When done in such localities they are not only wrongs to the public at large, but are additional wrongs to the corporation. To suppress them when it can be done, and when there is a failure to do so, to punish the guilty parties, in many cases forms a part of the duties of such corporation. Many of them can, and ought to, be made penal by incorporated cities and towns, although already made so by the statute. It sometimes becomes· necessary for them to do so in order to accomplish the objects of their organization." This language is especially applicable to. the nefarious sale, and having in possesson for unrestricted sale, of cocaine and other deadly drugs, so largely used in this day as a substitute for ordinary stimulants or intoxicants, and a good example of the application of the principles above stated is found in *Mon Luck* v. *Sears,* 32 L. R. A. 738.

There are abundant adjudications upon the point now under consideration.

In *Ex parte Hong Shen,* 98 Cal. 681, the Court said: "Whenever a municipal by-law comes in conflict with the State law, the by-law must give way. It is contended there is such conflict because the ordinance makes another and different regulation for the sale of an article of commerce than that made by the State statute. The soundness of this

contention we cannot admit. *There may be different regulations, without conflict."*

In *State* v. *Ludwig,* 21 Minn. 202, a State law forbid keeping open any place of business on Sunday under penalty of $2, while the city ordinance forbid the opening of a saloon under penalty of $25. The Court said: "There is no State law authorizing the acts made penal by this ordinance. On the contrary, the State law makes them unlawful. The Legislature may authorize a municipal government to impose new and additional penalties for acts already made penal by laws of the State," and although the charter forbid the passage of any ordinance repugnant to State laws, there was held to be no conflict in that case.

In *McPherson* v. *Chebanse,* 114 Ill. 51, in a similar case, the Court said: "The ordinance does not prohibit what the statute permits. There is no repugnancy between them."

In *Linneus* v. *Dusky,* 19 Mo. Ap. 20, the ordinance forbid all persons, except certain officials, from carrying concealed weapons, under certain penalties. The State law allowed one whose life had been threatened to carry such weapon, but the ordinance made no such exception. It was held there was no repugnancy and that the ordinance was valid.

In *Com.* v. *Goodnow,* 117 Mass. 114, an old Act of 1799 forbid the projection of any bow window in Boston more than one foot, under the penalty of $1.00 for each day after notice to remove. The Act of 1854 authorized the city to make all needful and salutary ordinances not inconsistent with the laws of the Commonwealth, under penalties not exceeding $50. An ordinance passed under this authority forbid projecting bow windows beyond a certain distance under a penalty from $4 to $50 and it was contended the ordinance was void because in conflict with the Act of 1799, but the Court upheld the ordinance.

These illustrations will suffice without further multiplying them.

This brings us to the final question of the reasonableness of the provision of the ordinance for the forfeiture of the

license of the person convicted, if he be a licensed pharmacist, physician, dentist or·veterinary surgeon.  The Court below held that "this part of the penalty in the ordinance is so unusual and oppressive as to be unreasonable and should be condemned for that reason."  Without entering into a discussion of that question, we are not prepared to say where a pharmacist, physician, dentist or veterinary surgeon, in violation of the restrictions of this ordinance, deliberately or recklessly sells the prohibited drugs, or keeps them·in his possession for the purpose of such sale, that the forfeiture of his license is so oppressive as to be unreasonable.  Indeed we are disposed to believe that both with regard to the depravity of the offender, and to the protection of the public against the evil at which the ordinance is aimed, forfeiture of license is the only fully adequate penalty, but we concur in the condemnation of that provision of the ordinance upon another ground.

Our examination of the matter leads us to the conclusion that under its charter the City of Baltimore has no power to declare any forfeiture.

In a note to *Cooley's Constitutional Limitations,* page 249, 5th Ed., the author says: "Municipal by-laws may impose penalties on parties guilty of a violation thereof, but they cannot impose forfeiture of *property or rights* without express legislative authority," citing *State* v. *Ferguson,* 33 N. H. 424, and *Phillips* v. *Allen,* 41 Pa. St. 481.  JUDGE DILLON states the law in the same way, in his work on *Municipal Corporations,* Vol. 1, sec. 336.  And *McQuillan on Ordinances,* sec. 170, says the general rule is that an ordinance cannot create a forfeiture in the absence of express power so to do," citing *Kirk* v. *Nowell,* 1 Tenn. Rep. 118; and he adds in the same section: "The American Courts have generally followed the early English rule, and have held that in the absence of express power given an ordinance cannot be enforced by forfeiture."  It was so held in *White* v. *Tallman,* 26 N. J. L. 67; *N. Y.* v. *Ordrenan,* 12 John. 122; *Varden* v. *Mount,* 78 Ky. 86; *Barter* v. *Com.,* 3 Pa. Penrose and

Watts, per Chief Justice Gibson, *Kneedler* v. *Norristown,* 100 Pa. St. 368, and *State ex rel Heise* v. *Columbia* in which the Court held there was no distinction between forfeiture of goods and of license.   Also in *Carey* v. *Washington,* 5 Fed. Cases, 2404, the Court said, "a corporation cannot restrain or prohibit any person from the full exercise of all his rights under the law of the land unless such power is expressly given by the charter, or necessarily results from some given express power.   This is a rule applicable to all corporations acting under a charter."   No authority is required to show that unless the elimination of forfeiture of license as part of the penalty would operate to destroy the general intent of the ordinance, the rest of the ordinance remains in full force and effect.

Finding no error in the judgment of the Court, it will be affirmed.

> *Judgment affirmed with costs to the appellee above and below.*