# HEUBECK *v.* MAYOR AND CITY COUNCIL OF BALTIMORE

[No. 10, October Term, 1954, (Adv.).]

*Decided July 21, 1954.*

The cause was argued before BRUNE, C. J., and DELAPLAINE and COLLINS, JJ., HORNEY, J., Chief Judge of the Second Judicial Circuit, and BYRNES, J., Associate Judge of the Eighth Judicial Circuit, both specially assigned.

*F. Murray Benson* and *Henry M. Decker, Jr.,* with whom was *Thomas G. McCausland* on the brief, for the appellant.

*Hugo A. Ricciuti, Assistant City Solicitor of Baltimore,* with whom were *Thomas N. Biddison, City Solicitor,* and *Edward Harlan, Deputy Cty Solicitor,* on the brief, for the appellee.

HORNEY, J., by special assignment, delivered the opinion of the Court.

In 1947 the General Assembly of Maryland, anticipating the end of Federal Housing and Rent Controls before

the emergency relating thereto in certain localities in the State had ceased to exist, enacted a law enabling the Mayor and City Council of Baltimore City and the County Commissioners of certain counties and the incorporated towns therein to regulate and control rents and housing within their respective limits during a period of two years ending June 1, 1949. Laws, 1947, Chapter 507; Code (1951) Art. 44C. In 1949 and also in 1951 the Act was amended so as to extend the expiration dates to June 1, 1951, and June 1, 1953, respectively. Laws, 1949, Chapter 688; Laws, 1951, Chapter 572. Again in 1953 the General Assembly by Chapter 774 amended the Act and intended to extend the expiration date to June 1, 1955, but because of certain irregularities in its enactment the last amendment was ineffective. No effort to revive the enabling act was thereafter made. The chancellor below held, and it is conceded here, that Chapter 774, supra, was invalid. Thus the provisions of Article 44C, pursuant to its terms as amended, expired on June 1, 1953.

As anticipated the Federal Housing and Rent Act of 1947 as amended expired on July 31, 1953. On May 21, 1953, the Mayor and City Council of Baltimore, pursuant to the provisions of Article 44C, supra, and the police powers of the City, enacted a rent control ordinance, it being Ordinance No. 716. Subsequently George F. Heubeck, the appellant, filed a bill in Circuit Court No. 2 of Baltimore City seeking to have said ordinance declared invalid and to enjoin the Mayor and City Council of Baltimore, appellee, from enforcing it. From a declaratory decree dismissing the bill, the appellant appealed. The appeal poses several interesting questions.

The City of Baltimore has the power to enact rent control legislation, even in the absence of an enabling act, provided such legislation is not in conflict with the Constitution of the State or any Public General Law thereof. The mere fact that the ordinance in its recitals relied partially upon the enabling act as amended, would

not prevent its passage under said police power. Section 6 (24) of the Baltimore City Charter provides that the Mayor and City Council of Baltimore shall have power by ordinance or such other method as may be provided in its charter "to exercise within the limits of Baltimore City all the power commonly known as the Police Power to the same extent as the State has or could exercise said power within said limits * * *". Inasmuch as the regulation of leases of dwellings is within the police power of the State, *Marcus Brown Holding Co. v. Feldman*, 256 U. S. 170, 65 L. Ed. 877, it is clear that the City has such power to the same extent. *R. B. Const. Co. v. Jackson*, 152 Md. 671, 137 A. 278. And as was said in *Rossberg v. State*, 111 Md. 394, 74 A. 581, with regard to the police power of the City, "broader or more comprehensive police powers could not be conferred under any general grant of police power * * *."

The enactment of the enabling act, Article 44C, supra, did not in any manner impair the police powers of the City. Although Section 5 of Article 44C provided that upon the expiration of the provisions thereof any ordinance adopted thereunder should cease to have any effect and thereupon become null and void, there is no doubt that the Baltimore City ordinance did not for that reason cease to be effective from and after July 31, 1953, inasmuch as said ordinance had also been enacted pursuant to the police powers of the City. Moreover, the enabling act did not impliedly repeal such police powers because the State Legislature preempted the rent control field. Section 7 of Article 44C specifically provides: "Nothing in this Article shall be construed to take away any power which any city or county now has under the State Constitution or any public local or public general law, but the powers granted by this Article shall be in addition to the powers heretofore granted." Hence, it is obvious that whatever effect the enactment and expiration of the rent control enabling act may have had upon the police powers of other political subdivisions of this State, lacking the broad

police power of Baltimore City, the police power of that City was not impaired.

The only limitations upon the police power of the City are found among the provisions of Article XIA of the Maryland Constitution, often referred to as the Home Rule Amendment, and the Baltimore City Charter, the granting of which was made possible by said Home Rule Amendment. Section 3 of Article XIA provides in part that from and after the adoption of a charter by the City of Baltimore, the Mayor and City Council of Baltimore, *"subject to the Constitution and Public General Laws of the State,"* (Italics supplied) shall have full power to enact local laws of the City, but "in case of any conflict between said local laws and any Public General Law now or hereafter enacted the Public General Law shall control." Likewise, Section 6 of the Baltimore City Charter, under which all the powers of Baltimore City are derived, including the police power, Section 6 (24), supra, provides, among other things, that the City shall have all of the powers specifically enumerated in said Section 6, but "subject to the provisions of said Constitution and Public General Laws." These limitations upon the power of the City to enact local laws or ordinances, including the exercise of its police power, appear to be clear and unmistakable. If a local law or ordinance conflicts in any manner with the Constitution or a Public General Law, then the local law or ordinance is invalid. The test is concisely stated in *Rossberg v. State, supra,* decided in 1909, several years before the Home Rule Amendment and the Baltimore City Charter adopted pursuant thereto, in which it was said that "ordinances which assume directly or indirectly to permit acts or occupations which the State statutes prohibit, or to prohibit acts permitted by statute or Constitution, are under the familiar rule for validity of ordinances uniformly declared to be null and void." In the *Rossberg* case, an ordinance providing for penalties different from and in addition to the penalties imposed by Article 27 of the Code for certain violations of the

narcotics laws was sustained by this Court, not because the ordinance enacted under the police power of the City prevailed over a conflicting Public General Law, but because said ordinance was not in conflict with the general law. A conflict only exists, as the opinion points out, when an ordinance prohibits something permitted by the Legislature, or permits something prohibited by the Legislature. In *Levering v. Park Commissioners,* 134 Md. 48, 106 A. 176, the ordinance permitted the playing of baseball and other games on Sunday by professionals, whereas the Public General Law prohibited work and bodily labor on Sunday. This Court, applying the test laid down in the *Rossberg* case, found that a conflict existed and held the ordinance invalid. While the ordinance in the *Levering* case had been adopted before the effective date of the Home Rule Amendment, nevertheless the rule of interpretation there applied is just as valid now as it was then. The only other case even remotely in point is that of *Herman v. Mayor & City Council of Baltimore,* 189 Md. 191, 55 A. 2d 491, which concerned the validity of an ordinance imposing a tax on certain alcoholic beverages in the hands of retailers. This Court sustained the ordinance, not for the reason that the ordinance took precedence over a conflicting Public General Law, as the learned chancellor below appears to have found, but because the Legislature had impliedly repealed Section 8 of Article 2B of the Code [now Code (1951) Art. 2B, Sec. 25 (a)], insofar as Baltimore City was concerned by the enactment of a Public Local Law applicable only to Baltimore City. Laws, 1945, Sp. Sess., Chapter 1. In that case the Court held that because the Public Local Law conflicted with the General Law the Public Local Law must prevail. Code (1951) Art. 1, Sec. 13. In the light of these decisions, the limitation of power expressed in the Home Rule Amendment, and especially the limitations of power expressed in the Baltimore City Charter, under which all of the City's powers are derived, to the effect that the exercise of such powers, including the police power,

are subject to the Constitution and Public General Laws, it is, we believe, abundantly clear that any local law or ordinance which in any manner conflicts with any Public General Law is invalid.

Having decided that Baltimore City has the power to enact rent control legislation, even in the absence of an enabling act, provided such legislation does not conflict with the Constitution or Public General Laws, and that the enabling act codified as Article 44C in the Code did not in any manner impair the police powers of the City, and having set forth the only limitations upon the police power of the City generally, it must now be determined whether or not the Rent Control Ordinance conflicts with any Public General Law. Section 9 of the Ordinance provides in part that "no action or proceeding to recover possession of any controlled housing accommodations, with respect to which a maximum rent is in effect under this ordinance, shall be maintainable by any landlord against any tenant notwithstanding the fact that the tenant has no lease or that his lease has expired, so long as the tenant continues to pay the rent to which the landlord is entitled * * *." The Public General Law, applicable to the entire State, provides for the eviction of tenants holding over at the expiration of their terms, if proper notice has been given. Code (1951) Art. 53, Secs. 1-8. Section 7 prescribes certain notice requirements, but Baltimore City is excluded from these requirements, and is permitted to establish its own notice requirements, which it has done, as to all types of cases. However, the Public Local Laws of Baltimore City do not control the right of eviction, which remains subject to the Public General Laws just referred to. Otherwise Sections 1 through 8 apply to Baltimore City as well as to the remainder of the State. The Rent Control Ordinance, therefore, prohibits an action which the Public General Law permits, that is, the eviction of a tenant upon the expiration of his lease. Under the test laid down in the *Rossberg* case and adhered to in the *Levering* case, there is a conflict

between the ordinance and the Public General Law, and as between the two, the Public General Law prevails. Inasmuch as in Article 44C, supra, the enabling act has expired, Section 9 of the ordinance is invalid.

The only other question necessary to be decided is whether or not the remainder of the Rent Control Ordinance must fall with Section 9. Section 11B of the Ordinance is a separability clause and provides: "If any provision of this ordinance or the application thereof to any person or circumstances shall be held invalid, the validity of the remainder thereof and the applicability of same to other persons or circumstances shall not be affected thereby." Such a provision is not a mandate to the courts, but is merely expressive of the legislative intent. In *Schneider v. Duer*, 170 Md. 326, 184 A. 914, it was held that a separability clause "is merely declaratory of an established canon of construction recognized by this Court," and that, regardless of such a clause, an act must fall entirely if the effect of declaring a portion of it invalid would render the remainder incapable of effecting the purpose for which the act was enacted. In this connection the case of *F. T. B. Corporation v. Goodman*, 300 N. Y. 140, 89 N. E. 2d 865, is remarkably similar to the case now before this Court. There, the City of New York had enacted an ordinance, under its home rule charter, regulating rents and evictions. Those portions of the ordinance relating to evictions were held to be invalid because they conflicted with the public general laws of the State of New York. In striking down the rent regulations as well, the Court of Appeals of New York said: "But the void eviction provisions of subdivisions d and e are not the whole of the local law. The rent fixing provisions of subdivision c remain to be discussed. Whether subdivision c can stand alone or must fall with subdivisions d and e is a question to which we now turn in the light of the separability clause found in subdivision o. The question is one of legislative purpose, namely: would the city council have enacted the local law if it has been aware

that the eviction provisions were invalid? The answer does not turn upon the division of the local law into sections or subdivisions * * *. The restrictions upon the right to evict tenants and the restrictions upon rent increases were regarded by the city council as being equally essential to the declared purpose of their local law. Hence the one set of restrictions cannot be separated from the other except by a remodeling of the law on a scale which, as we believe, would be beyond the judicial power." From a perusal of the entire Baltimore Rent Control Ordinance it is apparent that the Mayor and City Council considered the problem of evictions to be an integral part of the problem of rent regulations. That the General Assembly of Maryland considered that rent regulations are of no avail without regulations governing evictions is apparent from the inclusion of Section 2 (c) in Article 44C. To establish a maximum rent for a dwelling unit without being able to prevent an eviction upon the expiration of the tenant's lease despite his willingness to continue to pay the prescribed rent would be a futile means indeed to achieve the ends for which the ordinance was enacted. As the valid portions of the ordinance are impractical and useless without the invalid portions, the entire ordinance must fall.

With this holding it is unnecessary that we decide whether the powers delegated to the Commission, set up by the provisions of the Baltimore Rent Control Ordinance, are invalid, and whether the evidence proffered by the appellant as to the existence of an emergency should have been admitted.

Whether a rent control ordinance enacted without a restraint on evictions would be valid is not before us in this case.

> *Decree reversed, with costs, and case remanded for the passage of a decree in conformity with this opinion.*